# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SHERRY LYNN CLARK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 2:10-00120** |
| **v.** | ) | **Judge Wiseman/Knowles** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 13. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 17. Plaintiff has filed a Reply. Docket No. 18.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on May 15, 2007,

alleging that she had been disabled since January 1, 2001, due to arthritis in her legs. *See, e.g.,* Docket No. 11, Attachment ("TR"), pp. 104-06, 127. She later amended her alleged disability onset date to May 5, 2006. TR 27. Plaintiff's application was denied both initially (TR 44) and upon reconsideration (TR 45). Plaintiff subsequently requested (TR 58) and received (TR 25-43) a hearing. Plaintiff's hearing was conducted on June 25, 2009, by Administrative Law Judge ("ALJ") Jack Williams. TR 25. Plaintiff and Vocational Expert, Jo Ann Bullard, appeared and testified. TR 25-41.

On September 17, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 15-24. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since January 1, 2001, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following impairments, the <u>combination</u> of which is severe: *morbid obesity, mild degenerative disc disease of the lumbar spine, gastroesophageal reflux disease, hypertension, hiatal hernia, degenerative arthritis of the knees with chronic left knee pain, ankle edema, and reduced visual acuity of the left eye* (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to occasionally lift and/or carry 20

pounds and 10 pounds frequently; stand and/or walk about 2 hours in an 8-hour workday for ½ hour at a time; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday; but has reduced visual acuity of the left eye; cannot fully stoop or bend due to obesity; cannot perform work with highly strict production standards; and should avoid temperature extremes of cold.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on October 7, 1959 and was a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from May 5, 2006, the amended alleged onset date of disability, through the date of this decision (20 CFR 404.1520(g)).

TR 17-23 (emphasis in original).

On October 21, 2009, Plaintiff timely filed a request for review of the hearing decision.

TR 11.  On November 23, 2010, the Appeals Council issued a letter declining to review the case

(TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner.

This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience.  *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule.

---

[1]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) rejecting the opinion of Plaintiff's treating physician, Dr. J.D. Allred; 2) "mechanically" applying the younger age category based on Plaintiff's age of 49 at the time of the hearing; and 3) finding that Plaintiff's subjective complaints of pain lacked credibility. Docket No. 14. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Weight Accorded to Opinion of Plaintiff's Treating Physician

Plaintiff argues that the ALJ "erred in rejecting the opinion of treating physician Dr. Allred, who described limitations that would not allow [Plaintiff] to perform substantial gainful activity, even at the sedentary level." Docket No. 14. Plaintiff maintains that Dr. Allred's assessment is fully supported by, and consistent with, the "other evidence of record," including Plaintiff's hearing testimony. *Id.* As apparent support for her argument that Dr. Allred's opinion is consistent with other evidence in the record, Plaintiff offers the findings of podiatrist, Dr. C. Lynn Rosenbaum, who determined that Plaintiff had diffuse pain with arthritis of the mid-foot. *Id.* Dr. Rosenbaum also considered: the results of a right foot MRI, which revealed "some sclerosis and perhaps narrowing of the mid-tarsal joints and hammertoe deformities"; the results of a left foot and ankle MRI, which was "remarkable for hammertoe deformities as well as minimal superficial swelling along the lateral aspect of the left ankle and some narrowing and sclerosis of the tarsal joints"; and the findings of consultative examiner, Dr. Jerry Lee Surber, who restricted Plaintiff to "at most sedentary work." *Id.*

Defendant responds that the ALJ properly rejected Dr. Allred's medical opinion because Dr. Allred provided minimal detailed support for his opinion. Docket No. 17. Defendant

additionally maintains that Dr. Allred's treatment notes fail to support the significant limitations noted in his opinion because the record indicates that Plaintiff received only routine and conservative treatment. *Id.* Defendant argues that Plaintiff's reliance on the findings of Dr. Rosenbaum to support her position that the ALJ erred in according little weight to Dr. Allred's opinion is misplaced, as treatment notes from Dr. Rosenbaum indicate contextual and diffuse pain, and Dr. Rosenbaum provided "unremarkable, routine, conservative treatment." *Id.* Defendant further argues that Plaintiff's reliance on the findings of Dr. Surber to support her position that the ALJ erred in according little weight to Dr. Allred's opinion is likewise misplaced, because: (1) Dr. Surber actually noted "near-identical functional limitations to those found in the ALJ's RFC determination," and (2) the ALJ, in fact, accepted Dr. Surber's findings, which were not consistent with Dr. Allred's opinion. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical

and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

[Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

It is undisputed that Dr. Allred has treated Plaintiff for an extensive period of time, and is, therefore, a treating physician. As a treating physician, the Regulations permit the ALJ to accord controlling weight to Dr. Allred's opinion, as long as that opinion is consistent with, and supported by, the evidence of record. See 20 C.F.R. § 416.927(d).

Dr. Allred opined, in his May 6, 2008 Medical Source Statement of Ability to Do Work-Related Activities (Physical) form, that Plaintiff could occasionally lift and/or carry less than 10 pounds; stand and/or walk (with normal breaks) less than 2 hours in an 8-hour workday; and sit (with normal breaks) for a total of about 4 hours in an 8-hour workday.[2] TR 423. Dr. Allred also opined that Plaintiff's pushing and/or pulling were affected in both her upper and lower extremities, that Plaintiff would be required to periodically alternate sitting and standing in order to relieve pain or discomfort, and that Plaintiff's pain was severe enough to "constantly" interfere with her attention and concentration. TR 424. Dr. Allred further opined that Plaintiff would need to take unscheduled breaks approximately every 20 minutes, that her legs should be elevated with "prolonged sitting," that her impairments were likely to produce "good days" and "bad days" causing her to be absent from work more than 4 times per month, and that she was incapable of performing even "low stress jobs." *Id.* Dr. Allred opined that Plaintiff had no visual or communicative limitations; that she could occasionally climb, balance, kneel, crouch, and crawl; and that she could feel without limitation, but that she was limited in her ability to reach, handle, and finger. TR 425. In response to: "please check how often the individual can do the following," Dr. Allred marked "constantly" for reaching, handling, and fingering. *Id.* Dr. Allred finally opined that Plaintiff should avoid even moderate exposure to extreme cold or heat, vibration, humidity/wetness, and hazards (machinery, heights), but that she was otherwise not environmentally limited. TR 426.

Dr. Allred expressed the same opinions in his January 21, 2009 Medical Source

---

[2]Dr. Allred did not check a box specifying Plaintiff's capacity to lift and/or carry frequently. TR 423.

Statement of Ability to Do Work-Related Activities (Physical) form regarding Plaintiff.  TR 432-35.  As support for the findings in both forms, Dr. Allred noted Plaintiff's back pain with radiculopathy, her severe bilateral knee arthritis "probable degenerative," her inflammatory arthritis, and her obesity.  TR 424, 433.

Despite the fact that Dr. Allred is a treating physician, the ALJ in the case at bar did not accept Dr. Allred's determinations regarding Plaintiff's ability to do work-related activities.  TR 21.  Specifically, the ALJ explained:

> As for the opinion evidence, the undersigned finds little evidentiary support for the extreme limitations assigned by the claimant's treating physician, Dr. Jonathan Allred.  His conclusions are not supported by objective medical findings or treating progress notes of record.  They are, at best, tenuous and patently sympathetic to the claimant's subjective complaints.  Accordingly, the undersigned does not accept Dr. Allred's assessment with regard to the claimant's ability to do work-related activities.

*Id.* (internal citations omitted).

The ALJ continued:

> For the same reasons articulated above, the undersigned also accords no weight to Dr. Allred's classification of the claimant as 'disabled.'  This opinion is not a medical opinion, but rather an administrative finding dispositive of a case, which requires familiarity with the Regulations and legal standards set forth therein.  Such issues are reserved to the Commissioner, who cannot abdicate his statutory responsibility to determine the ultimate issue of disability.  Opinions on issues reserved to the Commissioner can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence.

*Id.*, *citing* 20 C.F.R. 404.1527(d)(2) and 416.927(d)(2); SSR 96-5p (internal citations omitted).

As the ALJ explained, he declined to accept Dr. Allred's conclusions with regard to

Plaintiff's residual functional capacity because they were based on Plaintiff's subjective complaints of pain. TR 21. As has been noted, the treating physician's opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. § 416.927(d). The ALJ further explained that Dr. Allred's classification of Plaintiff as "disabled" cannot be accorded controlling weight because the issue of disability is solely reserved to the Commissioner.

Additionally, with regard to Plaintiff's argument that Dr. Rosenbaum's treatment notes support Dr. Allred's opinions, the ALJ correctly noted that Dr. Rosenbaum provided Plaintiff with routine, conservative treatment. TR 20. In fact, Dr. Rosenbaum treated Plaintiff with the use of orthotic insoles and taping. *See* TR 183. Dr. Rosenbaum characterized Plaintiff's pain as "more mechanical in nature." *Id.* The record reflects nothing in Dr. Rosenbaum's treatment notes that indicates that Plaintiff suffered from debilitating pain or substantial functional limitations. *See* TR 182-83. Dr. Rosenbaum's conservative treatment does not support Dr. Allred's limitations.

Moreover, while Plaintiff cites to a June 8, 2007 physical examination conducted by Dr. Allred, in which Dr. Allred opined that Plaintiff's impairment "definitely limits here [*sic*] ability to stand for any significant amount of time" (TR 370), the ALJ noted that other evidence of record had not shown any significant abnormalities. TR 19. Specifically, the ALJ stated:

> Other physical examinations have not shown any significant
> abnormalities. At most, the claimant had mild tenderness and
> spasm in the lumbar spine areas. There were no neurological
> deficits. A cane or other assistive device has never been
> prescribed. Objective medical tests have failed to show any
> significant abnormalities. June 11, 2009 imagery revealed some
> mild degenerative disc disease of the lumbar and possibly the
> cervical spine, and degenerative joint disease of the right hip.

13

> Only conservative treatment with medication has been
> recommended.  Surgery has never been recommended.  At the
> hearing, the claimant related having relief of her pain with
> medication and did not report any adverse side effects of
> prescribed medications.

*Id.* (internal citations omitted).

Furthermore, although Plaintiff offers the results of her May 31, 2005 MRIs of her feet as

apparent support for her position that Dr. Allred's opinion is consistent with other evidence, the

ALJ noted that the MRIs of Plaintiff's feet were generally unremarkable, stating:

> Despite the claimant's alleged foot pain and complaints of arthritis,
> a May 31, 2005 MRI of the right foot was entirely unremarkable
> aside from hammertoe deformities.  Aside from minimal
> superficial swelling along the lateral aspect of the left ankle, and
> MRI of the left foot and ankle was also remarkable only for
> hammertoe deformities.

TR 19 (internal citations omitted).

Thus, contrary to Plaintiff's contention that the MRI results are consistent with (or

support) Dr. Allred's opinion that Plaintiff is "disabled," a review of the complete MRI results

demonstrates that they are actually inconsistent with Dr. Allred's opinion.

Moreover, despite Plaintiff's citation to Dr. Surber's findings as apparent support for the

argument that Dr. Allred's opinion is consistent with other evidence in the record, the ALJ

explicitly noted that Dr. Surber's July 25, 2007 assessment is supportive of a finding of "not

disabled."  TR 21.  The ALJ acknowledged Dr. Surber's opinion that Plaintiff would be able to

occasionally lift or carry at least 10 to 20 pounds during up to one third to one half of an 8-hour

workday; stand or walk (with normal breaks) for up to 2 to 4 hours in an 8-hour workday; and sit

(with normal breaks) for up to 6 to 8 hours in an 8-hour workday.  TR 21-22, *citing* TR 392.  In

accepting Dr. Surber's assessment, the ALJ explained that, "Dr. Surber's determinations are

credible because they are supported by medical signs and findings subsequent to his own personal examination of the claimant." TR 22. The ALJ further noted that during Dr. Surber's consultative examination, Plaintiff was able to perform the straightaway, tandem, and heel-to-toe walks without the use of assistive devices, and she moved easily from the chair to the examination table. TR 18, *citing* 391. As can be seen, Dr. Surber's assessment is inconsistent with Dr. Allred's opinion that Plaintiff is "disabled."

Additionally, Plaintiff reported daily activities that the ALJ determined were "***clearly not the activities of an individual with <u>totally</u> disabling physical conditions***." TR 20 (emphasis in original). As the ALJ stated, Plaintiff reported engaging in the following daily activities: household chores, doing laundry, cooking, and driving. *Id.* While the ALJ acknowledged Plaintiff's reported limitations, he stated:

> Although the claimant has otherwise described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

*Id.*

The ALJ noted that Plaintiff's reported daily activities were not limited to the extent one would expect, given the complaints of disabling symptoms and limitations (*id.*), and that Plaintiff's ability to engage in such activities is inconsistent with Dr. Allred's opinion that Plaintiff is "disabled."

Dr. Allred treated Plaintiff for an extensive period of time, a fact that would justify the ALJ's giving greater weight to his opinion than to other opinions, as long as his opinion was consistent with, and supported by, the evidence of record. As has been demonstrated, however, Dr. Allred's opinion contradicts other substantial evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above, and the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. *Id.*; 20 C.F.R. § 416.927(e)(2).

Because Dr. Allred's opinion was inconsistent with, and unsupported by, the evidence of record, the Regulations do not mandate that the ALJ accord Dr. Allred's evaluation controlling weight. Plaintiff's argument fails.

## 2. Applying the Younger Age Category

Plaintiff argues that, because she was 20 days away from becoming age 50 at the time of her hearing decision, the ALJ erred in "mechanically" applying the "younger individual" age category (ages 45-49) to Plaintiff, as the ALJ's usage of the "younger individual" age category resulted in a finding of "not disabled," whereas usage of the "closely approaching advanced age" category would have resulted in a finding of "disabled."[3] Docket No. 14. Plaintiff maintains

_____

[3]While the title of Plaintiff's argument is, "The ALJ erred in failing to find Ms. Clark restricted to at most sedentary work and in mechanically applying the younger age category in a borderline situation" (Docket No. 14), Plaintiff's argument addresses only the issue of applying the younger age category. *See id.*
Moreover, contrary to Plaintiff's statement that the ALJ erred in failing to find Plaintiff

that she specifically requested that the ALJ address Plaintiff's borderline age, and that his failure to do so constitutes reversible error.  *Id.*

Defendant responds that, because Plaintiff was 49 years of age on both the date of the hearing and the date of the ALJ's decision, the ALJ properly applied the younger individual age category to Plaintiff.  Docket No. 17.  In particular, Defendant argues that the ALJ was aware of the borderline age issue, as Plaintiff's representative specifically brought the issue to his attention at the hearing; the ALJ proffered an appropriate hypothetical to the VE; and the ALJ appropriately relied on the VE's answer.  *Id.*  Defendant also contends that, other than her argument that she was 20 days from turning 50, Plaintiff does not cite to specific evidence necessitating the application of the "closely approaching advanced age" category.  *Id.*

At Plaintiff's hearing, Plaintiff's counsel engaged in the following exchange with the ALJ:

> ATTY: Considering that Ms. Clark is within six months of turning 50, we would request that you consider her meeting the grids as of that age.
>
> ALJ: Okay, I'll think about it and if I determine that – okay.
>
> ...

---

restricted to at most sedentary work, the vocational expert specifically identified the jobs that Plaintiff could perform as "sedentary, unskilled" (TR 41), and the ALJ subsequently accepted that finding (TR 23).  Plaintiff's own brief concedes that the vocational expert testified that Plaintiff would be able to perform the requirements of sedentary unskilled work, based upon the restrictions given by the ALJ.  *See* Docket No. 14.  Because Plaintiff does not actually proffer any arguments regarding the ALJ's "failing to find Ms. Clark restricted to at most sedentary work," and because Plaintiff's contention is inconsistent with the record, the undersigned will not analyze this "claim" further.

ATTY: But if you should determine that she can do sedentary work we would like you to consider that she is just on that borderline of just about to turn 50.

ALJ: I understand, okay and I made a note here.

TR 42.

During the hearing, the ALJ posed a hypothetical to the VE that described an individual with the same age, education, work experience, restrictions, and residual functional capacity as Plaintiff, namely:

Assume if you will a younger individual at age 49 who has a high school education and past relevant work to that of the claimant. Assume the individual is over weight . . . and have [*sic*] mild degenerative disc disease of the low back, high blood pressure, gird, and hiatal hernia. Assume that there's reduced vision of the left eye but the acuity using both eyes together measures between 20/30 and 20/40. The individual has ankle edema and that her obesity limit [*sic*] her to standing or walking two hours per day, one half hour at a time. Assume that she cannot fully stoop or bend due to the obesity. What I'm suggesting is not so much a matter of how frequently but how far she can bend or stoop because of the abdominal girth and physical limitations. . . . [A]ssume that she cannot perform work with higher, strict production standards and should avoid extremes of cold.

TR 40.

Based upon these restrictions, the VE testified that Plaintiff would be able to perform "sedentary, unskilled" jobs. TR 41.

Plaintiff correctly points out that, at age 50, the restrictions noted above would have directed a finding of "disabled" pursuant to grid rule 201.14, which is applied to persons ages 50-54 who have been limited to a maximum capacity of sedentary work. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 2, 201.14. Plaintiff, however, proffers no case law or statute that requires an ALJ to apply an older age category merely because Plaintiff is approaching that age category. Rather,

20 C.F.R. 404.1563(b)(1) provides:

> ...If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will *consider* whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. 404.1563(b)(1)(emphasis added).

In fact, the SSA's Hearing, Appeals, and Litigation Law manual ("HALLEX") mandates that where a borderline age situation exists, the claimant must show progressively more additional vocational adversities to support the use of the higher age group. HALLEX II-5-3-2. Absent a showing of such adversities justifying the use of the higher age category, the ALJ will use the claimant's chronological age, "even when the time period is only a few days." *Id.*

Moreover, the Sixth Circuit has placed the appropriateness of applying an older age category in borderline age situations within the discretion of the ALJ, and the ALJ is not required to place a claimant in an age category that does not include her age. *See Crady v. Sec'y of Health & Human Servs.*, 835 F.2 617, 622 (6th Cir. 1987); *Ellison v. Comm'r of Soc. Sec.,* 101 F.App'x 994, 996 (6th Cir. 2004). Thus, an ALJ's application of an older age category to any claimant is discretionary.

In the case at bar, the ALJ considered the evidence of record and chose to rely on the VE's opinion that Plaintiff would be able to adjust to a number of sedentary jobs. This is within the ALJ's province. The ALJ was aware of Plaintiff's borderline age and considered it in relation to the evidence of record. Despite Plaintiff's argument that the ALJ should have applied the closely approaching advanced age category, the Regulations, HALLEX, and Sixth Circuit precedent do not require the ALJ to do so when Plaintiff had not yet reached 50. Plaintiff's

argument fails.

### 3.  Plaintiff's Subjective Complaints of Pain

Plaintiff contends that the ALJ failed to give adequate reasons for determining that
Plaintiff's reports of pain were not fully credible.  Docket No. 14.  Specifically, Plaintiff
maintains that while the ALJ made reference to the regulations concerning complaints of pain,
the ALJ did not fully discuss the relevant factors or apply them to the facts of the case at bar.  *Id.*

Defendant responds that the ALJ properly considered Plaintiff's subjective complaints of
pain, and determined that they were not credible to the extent that they were inconsistent with
Plaintiff's residual functional capacity assessment.  Docket No. 17.  Defendant maintains that the
ALJ considered the evidence and articulated several reasons for his conclusion that Plaintiff's
statements were not fully credible, including, *inter alia*, her reported daily activities, the
essentially routine and conservative treatment she received, her generally vague allegations
regarding her symptoms and limitations, and her appearance and demeanor during her hearing.
*Id., citing* TR 20-21.

Plaintiff also contends that because her hearing testimony was consistent with the
statements she has given to her doctors, her statements were credible and support her allegations
of disabling pain.  *Id.*  Defendant asserts that Plaintiff's argument that her testimony was credible
because it was consistent with statements she made to doctors is circular because she "relies on
the assumption that her statements are credible in order to argue that her statements are
credible."  *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations

of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

Plaintiff argues that she satisfies the first prong of the *Duncan* test because there is objective medical evidence of an underlying medical condition, namely osteoarthritis of the knees and feet, and degenerative disc disease. *Id.* Plaintiff argues that she satisfies the second prong of the *Duncan* test because Plaintiff's established medical conditions are of a severity that they could reasonably be expected to produce her alleged pain. *Id.*

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they were inconsistent with Plaintiff's residual functional capacity assessment. TR 20.

Contrary to Plaintiff's assertion that the ALJ failed to give adequate reasons for rejecting her reports of pain, the ALJ specifically explained:

> The claimant has, at least at times, described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitation. At one point or another in the record (either in forms completed in connection with the application and appeal, in medica reports or records, or in the claimant's testimony), the claimant has reported the following daily activities: household chores, doing laundry, cooking, and driving. ***Such activities are clearly not the activities of an individual with <u>totally</u> disabling physical conditions.*** Although the claimant has otherwise described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty.

Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

TR 20 (emphasis in original).

Additionally, the ALJ discussed the fact that Plaintiff had not generally received the type of medical treatment one would expect for a totally disabled individual. *Id.* He explained:

Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. No surgery has every [*sic*] been recommended for any of her conditions, nor has she ever even been offered trigger point or epidural injections for her pain. At the hearing, the claimant reported at least some relief of pain with use of her prescribed medications such as Tramadol. The claimant has not taken any narcotic-based pain relieving medications in spite of the allegations of quite limiting pain.

*Id.*

The ALJ continued:

The description of the symptoms and limitations which the claimant has provided throughout the record has generally been inconsistent and unpersuasive. The claimant's description of symptoms has been quite vague and general, lacking the specificity which might otherwise make it more convincing. The claimant has not provided convincing details regarding factors which precipitate the allegedly disabling symptoms, claiming that the symptoms are present 'constantly' or all of the time.

TR 21.

The ALJ, in his decision, properly addressed Plaintiff's daily activities, the intensity of Plaintiff's pain, the precipitating and aggravating factors, the type, dosage and effect of medication, and the other treatment or measures to relieve pain. As has been noted, the ALJ,

after evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, could properly determine that Plaintiff's subjective complaints of pain and other disabling symptoms were not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

With regard to the ALJ's observations of Plaintiff during her hearing, the ALJ stated:

> Another factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive appearance and demeanor while testifying at the hearing. It is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity. The claimant betrayed no evidence of pain or discomfort while testifying at the hearing. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight in reaching the conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.

TR 21.

The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a clearly articulated, well-reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Plaintiff's argument that the ALJ failed to give adequate reasons for rejecting Plaintiff's reports of pain fails.

Finally, Plaintiff's position that her complaints of pain are credible because her testimony is consistent with her statements made to doctors also fails, because, as discussed above, the ALJ properly determined that Plaintiff's reports were not fully credible, and because the ALJ properly

decided to not accord Dr. Allred's opinion controlling weight. Because the ALJ determined that both Plaintiff and Dr. Allred lacked credibility to the extent that their opinions were inconsistent with his ultimate determination of Plaintiff's residual functional capacity, Plaintiff's reliance on her subjective reports of pain to show that her subjective reports of pain are credible, fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____

E. CLIFTON KNOWLES
United States Magistrate Judge